GEORGE WAGNER, Appellant, *vs.* ROBERT A. WAGNER *et al.*
Appellees.

*Opinion filed February 16, 1910.*

1. WILLS—*what tends to show that testator did not intend to create perpetual trust.* A statement by testator to the effect that he desired to have his investment in certain brewery stock kept intact by his three sons after his death will be held to be advisory, merely, and as not showing an intention to perpetuate indefinitely his investment, where he gave one son his share of the stock absolutely and authorized the trustees for the other two to sell or pledge their shares and to terminate the trust, in their discretion.

2. SAME—*what is not necessary to create spendthrift trust.* It is not necessary to the creation of a spendthrift trust that the *cestui que trust* shall be denominated a spendthrift or that the testator shall give his reasons for creating the trust, or that the will shall contain all restrictions and qualifications incident to such trust; and if it appears from the whole will that the testator intended to create a spendthrift trust, such intention will be given effect without inquiry into the question whether the *cestui que trust* was, in fact, a spendthrift.

3. SAME—*gift over is not essential to creation of a spendthrift trust.* If it was the intention of the testator, in creating a spendthrift trust in favor of his two sons, that the trustees might use the whole property for the support and maintenance of the sons or terminate the trust in their lifetime and deliver the corpus to them, and that if the trust was not terminated at the death of the sons any remaining portion of the estate should go to their heirs, the fact that there was no express gift over after the termination of the trust does not render it invalid.

4. SAME—*when a bequest may be sustained as a gift in trust with enjoyment of possession postponed.* A bequest of shares of stock in trust for the testator's two sons, with power to the trustees to use the whole of the property for the maintenance or support of the sons or to terminate the trust, in their discretion, may be held valid as a gift to the sons not to take effect in possession until a future day, even though the trust should be considered invalid as a spendthrift trust.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. W. H. GEST, Judge, presiding.

This was a bill filed by appellant for the construction of the will, and first codicil thereto, of his father, George Wagner, deceased.

George Wagner died testate January 10, 1907, leaving three adult sons, Robert A. Wagner, Ernst Wagner and appellant, George Wagner, as his only heirs-at-law. He left no widow surviving him. His will bears date June 3, 1901. The first paragraph directed the executors and trustees named in the will to take possession, as soon after the testator's death as possible, of all his estate, real, personal and mixed. The second paragraph appoints his son Robert A. Wagner and friend Bernard D. Connelly executors and exempts them from liability to give bond. Said second paragraph devises and bequeaths to the executors all the testator's estate, real, personal and mixed, in trust for the uses and purposes in said will mentioned. Said second paragraph directs that after the payment of the testator's debts and bequests made in the will, the executors and trustees invest and keep invested the residue of his personal estate in good securities and keep rented the real estate to the best advantage, and out of the income therefrom pay the taxes, insurance, repairs and other legitimate demands against the estate. The third paragraph recites that the testator had made liberal advancements to his sons George and Ernst, and for the purpose of equalizing the advancements he gave to his son Robert A. Wagner sixty-two shares of stock in the People's National Bank of Rock Island and $5000 in cash, and directed that if Robert died before the testator's death, his (Robert's) wife should receive said bank stock and $5000. By the fourth paragraph he gave the two children of his son George Wagner each the sum of $2500, which was to be deducted from his said son George's share of his father's estate. By the fifth paragraph he authorized the executors and trustees to mortgage, pledge or sell the whole or any part of the real or personal estate upon such terms and in such manner as they

should see fit, and to execute notes, mortgages and deeds, and use the proceeds of such sales or mortgages, in their discretion, for the improvement of any other part of the testator's estate. The sixth paragraph provided that all stocks, bonds and securities belonging to the testator at the time of his death should form a part of the trust created by his will, and the executors and trustees were authorized to sell and dispose of the same and were exempted from any liability from loss or depreciation in the value of the securities, and the executors and trustees were authorized to make investments and re-investments of the trust fund in securities or real and personal property. The seventh paragraph authorized the executors and trustees to compromise any debts owing by the testator or to his estate, and to give time for the payment of debts due the estate, with or without security. The eighth paragraph confers authority upon the executors and trustees to construe the will if any question of its construction should arise. The ninth paragraph fixes the compensation the executors and trustees are entitled to. The tenth paragraph is as follows: "When the time for the closing up and final distribution of my estate arrives, it is my wish that all real, personal and mixed property, of every kind, remaining under the control and in the possession of my said executors and trustees shall be distributed among my said legal heirs in accordance with the laws of the State of Illinois relating to descent." The eleventh paragraph provides that if both of the executors and trustees named should decline to qualify or should die or resign, the circuit court of Rock Island county should appoint two suitable and reliable persons as successors in trust, and when appointed and qualified they should have all the powers and authority conferred by the testator upon the trustees and executors named in the will.

The first codicil is as follows:

"I, George Wagner, widower, of the city of Rock Island, in the county of Rock Island, in the State of Illinois,

being of sound mind and memory, do make, publish and declare this the first codicil to by last will and testament, bearing date June 3, 1901.

"Whereas, since the making of my said last will I have converted the most of my estate into personalty; and whereas, many years of my life have been given to the up-building of the brewing industry in the city of Rock Island, and the fruits of my long business career are largely represented by shares of capital stock of the Rock Island Brewing Company now in my name; and whereas, it is my earnest wish and desire that as far as possible my personal estate and holdings in said Rock Island Brewing Company may be kept intact by my sons after my death:

"Now, therefore, I do hereby give, devise and bequeath unto Robert A. Wagner and Bernard D. Connelly, executors and trustees named in my said last will, one-third of my holdings in said Rock Island Brewing Company's stock in trust for the benefit of my son Ernst Wagner; and I also give, devise and bequeath unto said Robert A. Wagner and Bernard D. Connelly, executors and trustees named in my said will, one-third of my holdings in said Rock Island Brewing Company's stock in trust for the benefit of my son George Wagner, first deducting, however, from the stock so to be held for the benefit of said George Wagner, such portion of $5000 as may be necessary to carry out the bequests under the fourth paragraph of my said last will. I direct my said trustees to pay to said Ernst Wagner the net income that may be derived from said Rock Island Brewing Company's stock so held for his benefit, at such times and in such amounts as said trustees, in their discretion, shall deem proper; and I direct that my said trustees shall pay to said George Wagner the net income that may be derived from said Rock Island Brewing Company's stock so held for his benefit, at such times and in such amounts as said trustees, in their discretion, shall deem proper.

"If at any time, for the proper support and maintenance of either of my said sons Ernst Wagner or George Wagner, or for any other purpose deemed expedient by my said trustees, it shall be advisable to pay unto said Ernst Wagner or said George Wagner any sums greater than the annual net income derived from said stock so held for their benefit, then I direct my said trustees to so pay such sums unto said Ernst Wagner and said George Wagner, and in order to raise additional sums I direct and empower my said trustees, in their discretion, to mortgage, pledge or sell any portion of my said stock so held by them in trust for their benefit; and I direct my said trustees to so pay such sums unto Ernst Wagner and said George Wagner, and in order to raise such additional sums I direct and empower my said trustees, in their discretion, to mortgage, pledge or sell any portion of said stock so held by them in trust.

"I desire my trustees to so administer the trusts herein created so that in their dealings with my said sons Ernst Wagner and George Wagner they shall, as nearly as possible, deal and treat with them as I would myself were I living, keeping in mind, however, my expressed desire to have the Wagner interests remain identified with the Rock Island Brewing Company, as far as practicable. The trusts hereby created shall terminate in the discretion of the trustees or their successors.

"I give, devise and bequeath the remaining one-third of my holdings in the stock of the Rock Island Brewing Company to my said son Robert A. Wagner, to be his forever. In all other respects I hereby ratify and confirm my said last will and testament."

The second codicil is not involved. The will and codicil were duly admitted to probate, and the executors and trustees therein named qualified and took upon themselves the administration of the estate and trusts.

The bill prays that the will and first codicil be construed to have vested the title to the real estate of the testator

immediately upon his death, subject only to be divested if found necessary to be sold by the executors and trustees, and partition of the real estate is prayed. As to the stock in the brewing company the prayer of the bill is that the codicil be construed to vest in the two sons of the testator, George and Ernst Wagner, two-thirds of the Rock Island Brewing Company stock, less the legacy to the children of George Wagner to be paid out of his interest in said stock, and that the court order and decree the executors to turn over and deliver to complainant in the bill, George Wagner, his interest in said stock.

Ernst Wagner was made a defendant to the bill and was defaulted. A guardian *ad litem* was appointed for the children of George Wagner, the complainant in the bill, and answered for them. Robert A. Wagner and Bernard D. Connelly, as executors and trustees, and Robert A. Wagner in his own right, demurred to the bill. The decree recites that it was stipulated between the parties that the demurrer should apply to and be, respectively, sustained or overruled as to the several parts of the bill in the same manner and to the same extent as if specially directed to said several and distinct parts. The court overruled the demurrer to so much of the bill as sought partition of the real estate or distribution of the personal estate, to be distributed in accordance with the directions of the tenth paragraph of the will, and held that said tenth paragraph was void for remoteness and obnoxious to the rule against perpetuities. As to so much of the bill as sought to have the trust created by the first codicil held invalid, the court sustained the demurrer and dismissed that part of the bill. That part of the decree is as follows: "That the first codicil to the last will and testament of George Wagner, deceased, is not ambiguous, uncertain, indefinite or contrary to any rule or policy of law; that it was the manifest intention of the testator to create either a spendthrift trust or a trust in which the enjoyment and possession of the

corpus of the gift by said *cestui que trustents* was post-poned, and that the said first codicil does create a valid trust, to terminate, respectively, at the time of the respective deaths of the *cestui que trustents,* if not sooner terminated by the voluntary act of the trustees in the exercise of the discretion given them by the testator, and that so much of the complainant's said bill as seeks to have the said codicil declared null and void should be dismissed at complainant's costs."

From so much of the decree as sustained the demurrer to that portion of the bill relating to the first codicil and holding said codicil valid complainant appealed to the Appellate Court. The correctness of the decree in sustaining the demurrer to the other portion of the bill and ordering partition of the real estate is not questioned by either party. The Appellate Court affirmed the decree of the circuit court, and complainant has prosecuted a further appeal to this court.

J. T. KENWORTHY, and S. R. KENWORTHY, for appellant.

CONNELLY & CONNELLY, and SEARLE & MARSHALL, for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Appellant has filed an able and exhaustive brief in which every possible objection to the validity of the first codicil is discussed, but we shall not undertake to refer to or answer the many contentions urged against the correctness of the decisions of the circuit and Appellate Courts. Our observations will be limited to what appear to us to be the controlling authorities and principles in determining the validity of the trust created by the first codicil. The first consideration in the construction of wills is the oft-repeated

rule that the intention of the testator must be determined, if this can be done, from the entire instrument, and when ascertained such intention is to be given effect, unless it is contrary to public policy or an established rule of law.

By the original will the entire estate of the testator was devised to his executors in trust for the uses and purposes therein specified, which we have, in substance, set out in the preceding statement. At the termination of the trust, and after the payment of certain specific bequests made, the property remaining in the hands of the trustees was required by the tenth paragraph of the will to be distributed to the testator's legal heirs in accordance with the laws of descent of the State of Illinois. The trust thus created was held by the chancellor to be void for remoteness and obnoxious to the rule against perpetuities, and the correctness of the decision in that respect is not questioned by either party. The first codicil, the validity of which is the only question before us for decision, recites that since the making of the original will the testator had converted most of his estate into personal property, and that it was largely represented by shares of stock in the Rock Island Brewing Company, to the building up of which industry he had devoted many years of his life. He expressed the desire and wish that as far as possible his holdings in the brewing company be kept intact by his sons after his death. He then devised and bequeathed to his executors and trustees one-third of his holdings in the Rock Island Brewing Company stock in trust for the benefit of his son Ernst Wagner and one-third for the benefit of his son George Wagner, appellant, first deducting from the interest held for the benefit of George Wagner such portion of the $5000 bequeathed by the original will to his children as might be necessary to pay the same. The remaining one-third of the testator's Rock Island Brewing Company stock was bequeathed to his son Robert A. Wagner absolutely, to be his forever. The codicil directs the trustees to pay to the tes-

tator's sons Ernst and George Wagner the net income derived from the Rock Island Brewing Company stock in such amounts and at such times as in their discretion they shall deem proper, and they are authorized for the support and maintenance of either of said sons, or if for any other purpose they deem it advisable, to pay to the said sons any sum greater than the annual net income from said stock, and, if necessary to raise such additional sums, the trustees are given authority to mortgage, pledge or sell any portion of the stock. The trustees are requested by the codicil to administer the trusts and deal with the sons Ernst and George as nearly as possible as the testator would do if living, "keeping in mind, however, my expressed desire to have the Wagner interests remain identified with the Rock Island Brewing Company, as far as practicable. The trusts hereby created shall terminate in the discretion of the trustees or their successors."

It is first necessary to determine the object and purpose of the testator in the creation of the trust in the brewing company stock for the benefit of his two sons. If the object was, as contended by appellant, to perpetuate indefinitely the investment in the brewing company stock, then the trust would be invalid for remoteness and as being in violation of the rule against perpetuities. But we do not gather from the testator's reference to the fact that many years of his life had been given to the building up of the brewing industry in the city of Rock Island, in which the fruits of his long business career were largely invested, and his desire, as far as possible, that his holdings in the Rock Island Brewing Company be kept intact by his sons after his death, that the primary or principal purpose for creating the trust was to continue the investment as it existed at his death, indefinitely. That such was not his purpose appears clear from other provisions of the codicil. He gave to his son Robert one-third of his brewing company stock absolutely. He could sell or dipose of it at any time he

saw fit. That such authority was given said son is incon-
sistent with the theory that the testator's intention was to
prevent any of the stock from passing into the hands of
others or from being sold and the proceeds used or re-
invested in other enterprises. As to the other two-thirds
of his stock, the trustees were authorized to pay the net in-
come from it to Ernst and George at such times and in such
amounts as they deemed proper, and if deemed by them ad-
visable to pay the sons a greater sum than the net income
the trustees were authorized to do so, and for the purpose
of raising the money they were authorized to pledge or sell
the stock. It cannot be doubted that the trust created was
an active trust. If the testator had intended to require his
investment in the brewing company stock to be continued,
he certainly would not have given the trustees power to
defeat his purpose and intention by selling or disposing of
the stock. The trustees were authorized, during the con-
tinuance of the trust, to sell and dispose of the stock held
for the benefit of said Ernst and George Wagner and to
pay to them the entire proceeds from the sale, less the be-
quest to the children of George Wagner, if they deemed it
advisable, whether necessary for the support of said sons
or not. The trustees were also authorized to terminate the
trust at their discretion, and in our opinion, if the trust
should be terminated during the life of the two sons, they
would be entitled to the corpus of the fund, and upon the
termination of the trust the trustees would be required to
turn it over to them. It seems plain, therefore, that it was
not the purpose of the testator to tie up his brewing com-
pany stock for an indefinite period, and that what he said
about keeping the investment intact in said stock was ad-
visory, merely. The real object and purpose of the trust
was that the property, and the income from it, might be
used for the support and maintenance of the testator's sons
Ernst and George, and the question then arises whether
the trust is valid as a spendthrift trust.

"Spendthrift trust is the term commonly applied to those trusts that are created with a view of providing a fund for the maintenance of another and at the same time securing it against his own improvidence or incapacity, for self-protection. The provisions against alienation of the trust fund by the voluntary act of the beneficiary, or *in invitum* by his creditors, are the usual incidents of such trusts." (26 Am. & Eng. Ency. of Law,—2d ed.—138.) Such trusts are now generally recognized as valid by the courts of this country, and have been sustained by this court in *Steib* v. *Whitehead*, 111 Ill. 247, *Bennett* v. *Bennett*, 217 id. 434, *King* v. *King*, 168 id. 273, and *Chapman* v. *Cheney*, 191 id. 574.

To create a valid spendthrift trust it is not necessary that the *cestui que trust* should be denominated a spendthrift in the will or that the testator should give his reasons for the creation of it. Nor is it necessary that the will shall in express terms contain all the restrictions and qualifications incident to such trusts. If, upon a consideration of the will, it appears the intention of the testator was to create such a trust, effect will be given to that intention. (*Bennett* v. *Bennett, supra; Baker* v. *Brown*, 146 Mass. 369.) Where the language used is sufficient to create a spendthrift trust, we think no inquiry can be made whether the person for whose use it was created was, in fact, a spendthrift, and the allegations of the bill in this case that the sons were *sui juris, compos mentis* and sober and industrious business men cannot be considered in construing the codicil.

Neither do we think it necessary to the creation of a spendthrift trust that there should be a gift over upon the termination of the trust. As we read and understand the codicil, it was the intention of the testator that the whole of the property might be used by the trustees for the support and maintenance of the sons, or they might terminate the trust during the lifetime of the sons and deliver over

the corpus to them. Whether the trust was terminated by the voluntary act of the trustees or by the death of the sons, if at the time of such death there remained all or a portion of the fund it was the intention of the testator that it should go to their heirs, and a failure to make a gift over to the heirs does not render the trust invalid, as being in violation of any rule of law or public policy. This construction renders testate the entire estate, and constructions of wills producing this effect are favored in law.

We are of opinion, under the authority of the cases above cited in this State and the weight of the current authority in other States, the trust created by the codicil is a valid spendthrift trust. We are also of opinion that, even if the trust created by the codicil should be held invalid as a spendthrift trust, it would be valid as a gift to the sons not to take effect in possession until a future day, namely, the termination of the trust. We are aware that there are respectable authorities holding the contrary and a number of such authorities are cited in appellant's brief, but such trusts are sustained in this State and many others when not in violation of the rule against perpetuities. In *Rhoads* v. *Rhoads*, 43 Ill. 239, the testator devised his estate to the executors in trust for his children, with directions and authority to invest the proceeds of the estate in government bonds, and at the expiration of fifteen years after his death to distribute the estate with its accumulations, $10,000 to his wife and the remainder equally among his children. The court, after reviewing the English authorities holding to the contrary, held that the postponement of the enjoyment of the gift did not invalidate it and sustained the will.

In *Claflin* v. *Claflin*, 149 Mass. 19, (20 N. E. Rep. 454,) the will under consideration gave one-third of the residue of the testator's personal estate to trustees for the benefit of a son and directed its payment to him, $10,000 when he reached the age of twenty-one years, $10,000 when he reached the age of twenty-five years and the balance when

he reached the age of thirty years. After he had attained the age of twenty-one years and had been paid $10,000, but before he was twenty-five years of age, he filed a bill to compel the trustees to pay him the remainder of the trust fund. His contention was that the provisions of the will postponing payment beyond the time when he arrived at twenty-one years of age were void. The court said: "There is no doubt that his interest in the trust fund is vested and absolute and that no other person has any interest in it, and the authority is undisputed that the provisions postponing payment to him until some time after he reaches the age of twenty-one years would be treated as void by those courts which hold that restrictions against the alienation of absolute interests in the income of trust property are void. There has, indeed, been no decision of this question in England by the House of Lords and but one by a chancellor, but there are several decisions to this effect by masters of the rolls and by vice-chancellors. (Citing numerous authorities.) These decisions do not proceed on the ground that it was the intention of the testator that the property should be conveyed to the beneficiary on his reaching the age of twenty-one years, because in each case it was clear that such was not his intention, but on the ground that the direction to withhold the possession of the property from the beneficiary after he reached his majority was inconsistent with the absolute rights of property given him by the will. This court has ordered trust property conveyed by the trustee to the beneficiary when there was a dry trust, or when the purposes of the trust had been accomplished, or when no good reason was shown why the trust should continue and all the persons interested in it were *sui juris* and desired that it be terminated; but we have found no expression of any opinion in our Reports that provisions requiring a trustee to hold and manage the trust property until the beneficiary reached an age beyond that of twenty-one years are void if the interest of the

244—8

beneficiary is vested and absolute. * * * It is plainly his will that neither the income nor any part of the principal should now be paid to the plaintiff. It is true that the plaintiff's interest is alienable by him and can be taken by his creditors to pay his debts, but it does not follow because the testator has not imposed all possible restrictions that the restrictions which he has imposed should not be carried into effect. * * * The strict execution of the trust has not become impossible. The restriction upon the plaintiff's possession and control is, we think, one that the testator had a right to make. Other provisions for the plaintiff are contained in the will apparently sufficient for his support, and we see no good reason why the intention of the testator should not be carried out." *Rhoads* v. *Rhoads, supra,* was cited in support of this decision.

Gifts to trustees for the benefit of persons who are objects of the testator's bounty but postponing their enjoyment in possession to a future day, properly limited as to time, have been sustained in *Lunt* v. *Lunt,* 108 Ill. 307, *Flanner* v. *Fellows,* 206 id. 136, *Howe* v. *Hodge,* 152 id. 252, *Pearson* v. *Hanson,* 230 id. 610, and *Armstrong* v. *Barbour,* 239 id. 389. The principle of these decisions appears to be that the equitable title vests in the beneficiaries immediately upon the death of the testator, that such trusts are not in restraint of alienation, and that the rule against perpetuities is not violated where the time to which the enjoyment in possession is postponed is properly limited by the will.

Kales on Future Interests, in the chapter on "Restraints on Alienation," discusses *Claflin* v. *Claflin* and other cases above cited, and reaches the conclusion that where *Steib* v. *Whitehead, supra,* is recognized as law, *Claflin* v. *Claflin* and *Lunt* v. *Lunt* will be followed, and the postponed enjoyment of an equitable interest, properly limited as to its duration in time, will be held valid. In section 294 the author discusses some of the reasons given by Prof. Gray

and Lord Langdale why postponed enjoyment should be held invalid, and says they are chiefly that such provisions are unwise. Discussing this subject the author says: "The worst charge that can be made against holding these postponed enjoyment clauses valid seems to be that they are either harmless, or in an extreme case, viz., where the *cestui* is a spendthrift and insists on selling his equitable interest for cash, unwise. To defeat the testator's intention wholly upon so trivial a ground ought not to be thought of. The attitude of the court in *Claflin* v. *Claflin* is in favor of carrying out the settlor's intention, and the result reached is, it is submitted, sound."

We are of opinion the decree of the circuit court was right, and the judgment of the Appellate Court affirming that decree is affirmed.          *Judgment affirmed.*