LAKE SHORE NATIONAL BANK and Melvin R. Luster, as Executors of the Last Will and Testament of Arthur M. Luster, Deceased, Plaintiffs,

v.

E. C. COYLE, Jr., District Director of Internal Revenue, Defendant.

Civ. No. 66-C-1002.

United States District Court
N. D. Illinois, E. D.

June 27, 1968.

**414**

Luster & Luster, Chicago, Ill., for plaintiffs.

Thomas A. Foran, U. S. Atty., N.D. Ill., for defendant.

## MEMORANDUM OPINION

### Cross-Motions for Summary Judgment

MAROVITZ, District Judge.

This is a tax refund case, in which plaintiffs seek to recover certain alleged over-payments of estate taxes in the amount of $82,942.71 and interest, for the benefit of the estate of Arthur Luster, deceased. The plaintiffs, Lake Shore National Bank and Melvin R. Luster, are co-executors of Arthur Luster's will.

The parties have submitted cross-motions for summary judgment. A stipulation of uncontested facts has been filed with the Court, and it appears that legal issues are all that remain. This Court entered an order on April 19, 1968, pursuant to which we granted plaintiff's motion for interlocutory summary judgment under Rule 56(d) and (e) Federal Rules of Civil Procedure. That order established as uncontroverted, certain preliminary factual circum-

stances, which the Government apparently was unable to contest by affidavit or documentation and which were preliminary to a decision on the legal questions presented by the motions for summary judgment. The relevant facts are these.

In 1958, the decedent, a man in his middle fifties, made plans to marry Lois Jean Parkson. As part of those plans be apparently intended to provide for her in his will, but did not wish her to be in a position to claim her statutory one-third share of his estate upon his death. Thus, shortly before the date set for the marriage, when the decedent was informed that he must enter the hospital for surgery, he insisted that his marriage plans and his intention to provide for his future bride be completed by the execution of the necessary documents before he entered the hospital.

Apparently, a pre-nuptial agreement and a will were discussed, agreed to, and written at the same time. The pre-nuptial agreement was executed on November 3, 1958, and the marriage took place on November 23, 1958. The day following, on November 24, 1958, the will was executed.

In essence, the pre-nuptial agreement stated that the decedent agreed to provide in his will for Lois Parkson the sum of $200,000 *or* twenty percent of the gross value of his estate, whichever was smaller. The sum would be payable to her in monthly installments of $600 for life, and she would have the right to appoint by will any portion of the above sum not received by her during her lifetime. Luster provided for installment payments apparently for fear that if she received a lump sum she would be a target for unscrupulous individuals, and that if she remarried, her husband might gain control over her money.

In decedent's will, the bequest to his wife was substantially as promised in the pre-nuptial agreement, but with three exceptions. First, the will provided a bequest of $200,000 in trust, payable in $600 monthly installments, but eliminated the alternative of the 20% limitation. Secondly, it provided

that the $600 payments were to be made for a period of 20 years, with the widow to then receive a lump-sum payment of $56,000, which would represent the balance of the $200,000. Like the pre-nuptial agreement, the will gave Mrs. Luster a general power, if she died before the end of the twenty year period, to appoint by will an amount equal to the unpaid monthly payments, up to $144,000, plus the $56,000. Thirdly, the will provided that all payments were to be made from the net income of the trust, unlike the pre-nuptial agreement which did not so specify.

Mr. Luster died in 1960. The estate tax return in issue was filed in April, 1962. In December, 1963, the surviving spouse filed a suit in the Chancery Division of Cook County Circuit Court to reform the will to conform to the testator's purported intention, by making the widow's bequest payable from the principal or corpus of the trust, rather than from the net income thereof. The reformation suit was not vigorously contested, nor was the United States a party thereto. On February 24, 1964, Judge Lupe entered a decree reforming the will to strike the words "from the net income of the trust." His decree found that the will should be construed together with the pre-nuptial agreement, which he held, had intended that the widow would receive a net of $600 per

month from the corpus of the trust. The Court's decree did not disturb the 20 year payment provision, and did not add to the will the 20% alternative limitation, both of which had been part of the pre-nuptial agreement. Thus, the will, as reformed, did not completely comply with the terms of the pre-nuptial agreement.

The estate tax return claimed a marital deduction under 26 U.S.C. § 2056(a), of $200,000, based on the bequest to Mrs. Luster. However, the Internal Revenue Service disallowed the deduction and assessed an additional tax of $75,837.10. The executors paid the additional tax under protest and brought Counts I and II of the present action to recover that amount plus 6% interest.

Count III of the complaint seeks to recover $7,105.61 plus interest, which is alleged to be an overpayment of interest. This separate issue will be dealt with, as will the Count IV issue relating to deduction of attorney's fees, after we decide the primary issues raised by Counts I and II.

Essentially, the key dispute is whether the bequest to Mrs. Luster runs afoul of the terminable interest exception to the marital deduction,[1] or if it does, whether it constitutes a deductible terminable interest under the "annuity" provision of § 2056(b) (6).[2]

---

1. The general rule governing terminable interests, is set forth in § 2056(b) (1) of Title 26:
 "(1) *General Rule*—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—"

2. Section 2056(b) (6) provides:
 (6) Life insurance or annuity payments with power of appointment in surviving spouse.—In the case of an interest in property passing from the decedent consisting of proceeds under a life insurance, endowment, or annuity contract, if under the terms of the contract such proceeds are payable in installments or

are held by the insurer subject to an agreement to pay interest thereon (whether the proceeds, on the termination of any interest payments, are payable in a lump sum or in annual or more frequent installments), and such installment or interest payments are payable annually or at more frequent intervals, commencing not later than 13 months after the decedent's death, and all amounts, or a specific portion of all such amounts, payable during the life of the surviving spouse are payable only to such spouse, and such spouse has the power to appoint all amounts, or such specific portion, payable under such contract (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in

In order to reach the issue of whether the bequest qualifies for the marital deduction, we must first determine that the reformed version of the will, as decreed by Judge Lupe, prevails. For if we find that the will should not be construed as reformed but as originally written, then it is clear that the bequest would not qualify for the marital deduction. Our opinion of April 19, 1968, which granted plaintiff's motion for interlocutory summary judgment, and vacated an earlier opinion denying same, stated the reasons for the above observations:

"However, if the bequest is construed to be paid from the 'net income' of the trust, it cannot qualify for the marital deduction. That is because a marital deduction is allowed only to the extent 'such interest is included in determining the value of the gross estate'. 26 U.S.C. § 2056. Since the trust was testamentary in nature, there could have been no 'net trust income' at the time of the testator's death, and, therefore 'net trust income' could not have been a part of the gross estate. Thus, only if the bequest is payable from the 'corpus' of the trust, which is part of the gross estate, could it qualify for the marital deduction.

Hence, unless we adopt the reformed version of the will, we cannot reach the question of whether the bequest qualifies for the marital deduction. Under the original version of the will, it would not."

While we must adopt the reformed version of the will in order to find for plaintiffs, the Government's argument, summarized *infra*, applies whichever edition of the will is accepted.

The purported marital deduction trust is set forth in Section Two of Article Three of the Will.[3]

favor of others), with no power in any other person to appoint such amounts to any person other than the surviving spouse—
(A) such amounts shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and
(B) no part of such amounts shall, for purposes of paragraph (1) (A), be considered as passing to any person other than the surviving spouse.
This paragraphs shall apply only if, under the terms of the contract, such power in the surviving spouse to appoint such amounts, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

3. Section Two provides:
"I direct my trustees to pay from the net income of the trust SIX HUNDRED ($600.00) DOLLARS a month to my wife LOIS JEAN LUSTER for a period of twenty (20) years. At the end of the twenty-year period LOIS JEAN LUSTER shall be paid, if living, the difference between TWO HUNDRED THOUSAND ($200,000.00) DOLLARS and the sum of ONE HUNDRED FORTY-FOUR THOUSAND ($144,000.00) DOLLARS. In the event that LOIS JEAN LUSTER shall die before receiving the full sum of TWO HUNDRED THOUSAND ($200,000.00) DOLLARS as specified in this paragraph, she shall have the right to appoint by will said balance of TWO HUNDRED THOUSAND ($200,000.00) DOLLARS. The trustees shall distribute to such person or persons as LOIS JEAN LUSTER appoints and directs by her Last Will and Testament such portion of the principal of the trust as shall equal the difference between TWO HUNDRED THOUSAND ($200,000.00) DOLLARS and the total amount actually received by LOIS JEAN LUSTER prior to her death, as provided in this Section Two. In addition, LOIS JEAN LUSTER shall be entitled to reside in an 03 apartment at Belmont Harbor Hotel rent-free as long as the trust owns or controls said hotel. In the event that said hotel is sold and the trust acquires or owns a comparable building, LOIS JEAN LUSTER shall have the right to occupy a comparable apartment rent-free for the duration of the trust. In the event that LOIS JEAN LUSTER receives insurance as beneficiary of an insurance policy on my life in a lump sum, the TWO HUNDRED THOUSAND ($200,000.00) DOLLARS provision herein shall be reduced by the amount of such insurance payment. In the event that LOIS JEAN LUSTER receives insurance in monthly installments under a policy of insurance on my life, the SIX HUNDRED ($600.00) DOLLARS a month payment shall be reduced by the amount of such monthly insurance payments.

Article Three creates a trust instrument which is divided essentially into several separate portions; Section One provides for monthly payments to the testator's mother; Section Three, for monthly payments out of net income to his son and daughter; Section Four, for educational disbursements for his grandchildren; and Section Two for the payments "from net income" to Mrs. Luster. Section Two, however, does not include a gift over in default of appointment by the widow. Section Seven, of Article Three, is a general residuary clause providing for equal disbursements at the termination of the trust to the testator's son and daughter. Essentially, the Government contends, that in the absence of a gift over in Section Two, if Mrs. Luster fails to exercise her power of appointment, the balance of her trust portion would pass under Section Seven to decedent's son and daughter, thereby causing Mrs. Luster's interest to terminate or fail, and to constitute a terminable interest.

Plaintiffs contend, on the other hand, that Section Two constitutes a valid spendthrift trust, in which only possession and enjoyment is postponed, but which gives to Mrs. Luster a vested equitable fee interest, which would pass to her heirs in default of appointment.

We believe the bequest to Mrs. Luster is a valid marital deduction interest, and is not a terminable interest under the statute.

 Initially, it is manifest from our conclusion that we have given effect to the reformed version of the will. In reaching that conclusion, we have been guided by the Illinois law respecting the factors of importance when considering the issue of reformation, for in tax cases, the federal courts must follow local law to determine relevant property interests. 10 Mertens, Law of Federal Income Taxation, § 61.05 (1964 Rev.). But, in deciding the issue, we are not bound by the Chancery Court decree, since the issue has not been determined by the highest court of Illinois. Under the rationale of Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967), we must apply what we think to be the state law on the point "after giving 'proper regard' to relevant rulings of other courts of the State," including the Chancery Court decree.

 In construing the will, the Court must attempt to give effect to the intention of the testator. That is best achieved if the court is "placed in the position of the testator and [has] a full knowledge of all the facts existing at the time when the will was written." Adam v. Albers, 19 Ill.App.2d 109, 114, 153 N.E.2d 279, 282 (1958). In light of the facts which have been adduced to show the circumstances in which the prenuptial agreement and the will were executed, we believe they should be construed together. In similar situations, the same rule has been applied. E. g. Keith v. Miller, 174 Ill. 64, 73, 51 N.E. 151; Kaiser v. Cobbey, 400 Ill. 214, 79 N.E.2d 604 (1948).

Plaintiffs explain that the "scrivener's" ineffectual attempt to say the same thing in the will that was said in the prenuptial agreement, but in a different manner, was responsible for providing that the $600 installments should be paid out of "net income." We are unable to determine the reason for the variance, for the "scrivener" (who is not named) has not submitted an affidavit, and plaintiffs' contention remains unsubstantiated.

Nevertheless, we believe that Mr. Luster intended to give his wife a $200,000 bequest out of principal, to be paid in $600 installments. Indeed, it appears from the evidence that the only reason the bequest was framed in installments, was to protect Mrs. Luster from potential loss of her money to unscrupulous persons. Seemingly, Luster would have given her a lump sum bequest otherwise. But he intended to provide for her needs on a monthly basis, and undoubtedly intended that she receive $600 every month. As a longtime businessman, he was prob-

ably well aware that at times, there might not be $600 in income available, and that to assure regular payments, the monthly installments should come from corpus. It would seem rather unusual for him to take a chance that the money she would need to live on monthly might not be available, and at the same time provide that at her death she could appoint the balance of the $200,000 to anyone she pleased.

There appears no reason, from the evidence adduced, for Luster to provide for his wife out of the "net income" of the trust, when the pre-nuptial agreement did not so contemplate. It may not be that a scrivener's error was responsible, but no other reason is suggested for the discrepancy between the two instruments. The Government has suggested no affirmative reason why such a deliberate distinction would be made.

It does make the point that there are other discrepancies between the pre-nuptial agreement and the will, namely the omission of the 20% alternative to the $200,000 bequest and the twenty year period of the trust, rather than monthly payments for life.

But those changes do not affect the probability that the words "from the net income" were included through inadvertence. Clearly the $200,000 figure was uppermost in Luster's mind. He was remarrying in middle age. His gross estate was in excess of $1 million. He knew that if his wife chose to renounce his will and take her statutory share, she could receive over $300,000. So he insisted upon a pre-nuptial agreement, which was written at about the same time as the will, and which ensured that his wife would receive at least $200,000, but would be unable to take her statutory share. The only reason for making the payments in installments rather than outright was for her protection. And as his wife was in her late thirties' when the will was written, Luster probably felt that his purpose in creating a "spendthrift trust" would be accomplished in twenty years from his death.

There is no evidence to indicate that he intended to give her monthly payments from one source, and a lump sum or a power to appoint from another. The pre-nuptial agreement is evidence to the contrary, as are the circumstances leading to the execution of the documents.

■ Admittedly, the purpose of seeking reformation in the Chancery Court was to achieve estate tax savings. That, of course, is immaterial if the true intent of the testator, as reflected in the construction of the will, results in a tax savings. Cf. Faulkerson's Estate v. United States, 301 F.2d 231 (7th Cir. 1962).

■■ However, Judge Lupe also believed the testator intended his wife's bequest to come from principal. His decree, of course, is not binding herein, and we are aware that it probably was not a true adversary proceeding. Nor was the Government a party thereto. But under *Bosch* we may accord "proper regard" to the decree, whatever that means. That is so even though a question of fact is involved. Indeed, in *Bosch,* a question of fact was involved in determining the ultimate legal issue— whether a release was a nullity. So here, a question of fact must be determined, albeit from an uncontroverted factual record, in order to decide the ultimate legal issue respecting reformation. Although we are not bound by Judge Lupe's decree, and do not accord it controlling or dominant significance, we do consider it to be another evidentiary factor bearing upon our construction of the testator's intention.

■ From all of the evidence before us, including sworn and uncontroverted affidavits of the testator's son, who assertedly discussed the pre-nuptial agreement and the will with his father before their execution, we believe the will should be construed as reformed in the Chancery Court to reflect the testator's true intention. Accordingly, in determining the estate tax issue, we shall assume that the bequest to Mrs. Luster is payable from the principal of the trust.

The issue then becomes, whether in default of appointment, the balance of the bequest passes under the residuary clause of the trust (Section 7 of Article Three), or descends to Mrs. Luster's heirs under the intestacy laws of Illinois. Upon this issue, initially at least,[4] hinges the permissibility of a marital deduction.

Illinois law governs in determining the nature of the interest received by Mrs. Luster. See Ashcraft v. Allen, 90 F.Supp. 543 (M.D.Ga.1950); In re Sayers F. Harman, 4 T.C. 335 (1945); and 10 Mertens, Supra, § 61.05 at pp. 61–22 and 61–23. Under that law it is undoubtedly possible to create a "spendthrift trust" in which only enjoyment in possession is postponed, if properly limited in time. Such trusts create an equitable vested fee in the beneficiary at the time of the testator's death. Wagner v. Wagner, 244 Ill. 101, 114, 91 N.E. 66 (1910); Moore v. Braun, 263 Ill.App. 243 (1931); De Korwin v. First National Bank of Chicago, 170 F.Supp. 112, 124 (N.D.Ill.1958).

It is not necessary to such an interest that there be a right over at the termination of the trust, for the fact that it is a vested interest means it includes a present right or title, even though the right to possession may be postponed. Wagner v. Wagner, supra, 244 Ill. at 111, 91 N.E. 66. Such interest could pass, if not devised, under the intestacy laws.

Section Two of Article Three, which contains the portion of the trust bequeathed to Mrs. Luster admittedly contains no right over in default of appointment. But from the undisputed evidence it seems that Mr. Luster intended to give his widow $200,000 in lieu of her statutory share, and to do so in installments in the form of a spendthrift trust, to protect her. Were the latter not a consideration, the inference is likely that he would have bequeathed her a lump sum payment. It can be further inferred that the general power of appointment evidenced his desire to allow her to do whatever she wished with the balance of her bequest upon her death. Were her bequest, in its present form, the subject of a wholly separate trust instrument, there is little question but that it would constitute a vested equitable fee, postponing only the enjoyment in possession, and in default of appointment, would pass to her heirs. Wagner v. Wagner, supra; Moore v. Braun, supra; De Korwin v. First National Bank, supra.

Does the residuary clause of Section Seven change the result? Essentially, Article Three considered as a whole, established a trust. Section Two is that part which provides for the monthly payments to Mrs. Luster. The other sections (One, and Three through Six) are concerned with gifts to other beneficiaries. But Section Seven provides what happens when the trust terminates after the initial twenty year (or extended) term.

Section Seven provides: (in pertinent part)

"The trust shall continue for a period of twenty (20) years after the date of my death, except that if all the adult living beneficiaries of my trust so desire, they may continue the trust beyond that period, but not to exceed the period of twenty-one (21) years beyond the date of the death of whichever of my children shall live the longer. At the termination of the trust, the principal, together with any accumulated income (after payment of any sum due to LOIS JEAN LUSTER as provided in this Will) shall be distributed one-half (½) to my son MELVIN R. LUSTER and one-half (½) to my daughter INA JEAN WOLFE * * *."

The Government contends that, at the termination of the trust, Section Seven controls the devolution of all remaining trust funds, as remain respectively from each of the portions of the trust (i. e. Sections One, Two, Three, and Four).

---

4. Even if plaintiffs were to lose on this issue, which they do not, they urge that the bequest to Mrs. Luster is a deductible terminable interest under § 2056(b) (6).

Should Mrs. Luster die prior to termination of the trust without exercising her power of appointment, it is alleged, the balance remaining in Section Two would also pass under Section Seven.

The parenthesized clause, in Section 7, "after payment of any sum due to LOIS JEAN LUSTER as provided in this Will," as the Government observes, does not explicitly provide for her interest to pass to her heirs upon the trust's termination, if she has previously died without exercising her power. It relates only to the final lump sum distribution at the termination of the trust.

But that is just the point. Section Seven is only concerned with the time of termination. At that time, if Mrs. Luster is still living, she is to be paid the balance owed her before the remainder of the trust funds are distributed. Section Seven does not purport to cover devolutions occurring prior to the trust's termination. If Mrs. Luster dies prior to that time, Section Seven is not concerned with her interests, for in Section Two she has been given a *vested* equitable fee under Illinois law. That means she has an *immediate* right of present or future enjoyment. She may exercise her power of appointment, but if she does not, her vested interest would pass to her heirs under the intestacy laws, just as would any other fee interest possessed by her. Her vested interest could not be divested except by express provision therefor. There is no such provision. We must interpret her interest as created and intended by the testator. In its present posture it is vested. Only a specific provision could transform a spendthrift trust with a power of appointment,

properly limited in time, from a vested equitable fee to a contingent interest, which would not pass as part of the beneficiary's intestate estate in default of appointment. Section Seven does not purport to do that. If she exercises her power and dies prior to the termination date, the appointees would be entitled to their bequests immediately upon her death. So if she dies in default of appointment, her legal heirs would immediately be entitled to the balance of her interest upon her death. Section Seven is inapplicable to the contingency of a default of appointment. It is only concerned with disbursements upon the termination of the trust. Only if she is living at the time the trust terminates does Section Seven affect her interests, by assuring the payment of the lump sum bequeathed to her by Mr. Luster.

Hence, we do not believe Section Seven provides for a gift over to Mr. Luster's children of the balance remaining from Section Two in default of appointment by Mrs. Luster. Consequently, her interest is not terminable, and qualifies for the marital deduction under § 2056(a).

Because of our finding on this point, it is obvious that Mrs. Luster's interest is not a deductible terminable interest under § 2056(b) (6).[5]

In Count III, plaintiffs seek to recover alleged interest overpayments of $7,105.61. Insofar as the bulk of the estate assets apparently consisted of interests in closely held businesses, the estate elected to pay the estate tax in installments, pursuant to Sections 6166 and 6601(b) of the Internal Revenue Code.[6]

---

5. Were plaintiff's case to stand or fall on that issue, it is our gratuitous observation that her interest is not an "annuity" as contemplated by Congress in enacting § 2056(b) (6).

6. Section 6166(a) provides:

"*Extension permitted.*—If the value of an interest in a closely held business which is included in determining the gross estate of a decedent who was (at the date of his death) a citizen or res-

ident of the United States exceeds either—
(1) 35 percent of the value of the gross estate of such decedent, or
(2) 50 precent of the taxable estate of such decedent,
the executor may elect to pay part or all of the tax imposed by section 2001 in two or more (but not exceeding 10) equal installments * * *"
Section 6601(b) provides:
"*Extension of time for payment of estate tax.*—If the time for payment of

The government contends that the estate failed to make the third installment payment when due on November 13, 1963; that under the provisions of § 6166, the entire balance thereby became due; and that although the interest rate under Section 6166 was only 4%, the default by the estate caused the interest rate to be raised to 6% as is provided by Section 6601(a) [7] and Regulation 301.-6601–1(b) (2) thereto. The plaintiffs admit that several installment payments were not paid when due, but deny that there is any Code authorization for raising the interest rate from 4 to 6% on estates paying in installments, when installments are not paid when due.

Plaintiffs' argument will receive scant consideration. Treasury Regulation 301.-6601–1(b) (2) which interprets § 6601 (a), states:

> "the full amount of the tax to which the extension * * * applies is not paid on or before the date of the expiration of the period of the extension * * * the unpaid amount shall bear interest at the rate of 6 percent per annum from the date of the expiration of the period of the extension * * to the day on which payment is received."

Plaintiffs argue that the regulation is an unauthorized extension of the statute. But all it does is summarize the statute rather than enlarge it. Certainly Congress could have provided for an increased rate of interest once the taxpayer fails to comply with the privilege given him to pay his taxes in installments. Indeed, Section 6601(a) is all-inclusive in referring to "any * * * tax imposed by this title." "Title" refers to the entire Internal Revenue Code of 1954 (Title 26, U.S.C.), which certainly includes Sections 6601(b) and 6166, which relate to extensions for estates consisting of closely held businesses.

Section 6166 states that if an installment is not paid when due, the unpaid portion of the tax payable in installments shall be paid upon notice and demand from the Secretary. Plaintiffs contend that no notice or demand was received. The estate subsequently paid up the deficiency caused by its delay in making certain payments. But that has no bearing upon the interest rate applicable during the period from default to payment.

The interest provision, § 6601, in subsection (a) states that interest accrues at six per cent from the last date prescribed for payment. In subsection (b) it discusses the normal extension or installment situation under Section 6166 and provides an interest rate therefor of 4%. But subsection (c), "Last Date Prescribed for Payment," states that such a date is determined under chapter 62 (which ends with Sections 6166 and 6167) with the application of the following rule:

> "(rules 1, 2, and 3 are inapplicable) * * * * * *
> (4) * * * in all other cases * * * the last date for payment shall be deemed to be the date the liability for tax arises (and in no event shall be later than the date notice and demand for the tax is made by the Secretary or his delegate)."

▬ That rule rebuts plaintiffs' argument that if no notice of non-payment was served, interest could not be increased. For under § 6166(h) (3), the date the liability for tax arises is the date fixed for each installment pay-

---

an amount of tax imposed by chapter 11 is extended as provided in section 6161(a) (2) or 6166, or if the time for payment of an amount of such tax is postponed or extended as provided by section 6163, the interest shall be paid at the rate of 4 percent, in lieu of 6 percent as provided in subsection (a)."

7. Section 6601(a) provides:
"*General rule.*—If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the rate of 6 percent per annum shall be paid for the period from such last date to the date paid."

ment, which in turn, under § 6601(c) (4), constitutes "the last date for payment." We believe interest rose immediately to the normal six per cent rate once the liability for the tax arose and was not paid, and that was when the various installment payments were due. § 6166(h) (3). The provision in § 6601 (b) for 4% interest in the case of extension payments, is an exception to the general rule of § 6601(a), which yields when the time payments are late, as is provided in § 6601(c), § 6166(h) (3) and Reg. 301–6601–1(b) (2). The general rule providing for 6% interest becomes applicable upon a payment lapse, and no notice or demand is necessary to raise the rate.

Plaintiffs' arguments on this issue are rejected, and defendant is allowed summary judgment on Count III.

Upon suitable proof to the Court of the reasonableness of the fees incurred, as alleged in Count IV, judgment, in part, as computed by the parties with respect to that issue, may properly be rendered for plaintiffs. Reg. § 20.2053–3(c).

Plaintiffs' motion for summary judgment is granted as to Count I, and the Government's motion for summary judgment is granted as to Counts II and III.