Thomas A. STANSBURY, Successor Executor of the Estate of Marjorie S. Stevens, Deceased, Plaintiff,

v.

The UNITED STATES of America, Defendant.

No. 81 C 3547.

United States District Court, N. D. Illinois, E. D.

May 7, 1982.

Kimball R. Anderson, Winston & Strawn, Chicago, Ill., for plaintiff.

T. Kazan Ray, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

## ORDER

ROSZKOWSKI, District Judge.

Before the court are cross-motions for summary judgment brought by the parties in this federal estate tax refund case. For the reasons hereinafter stated, plaintiff's motion for summary judgment is granted; defendant's motion for summary judgment is denied.

For purposes of these motions, the facts are not in dispute. On April 4, 1934, Mary E. Stevens, a resident of Illinois, died intestate, leaving as her only heirs her children Delmar A. Stevens ("Delmar") and Elsie Stevens ("Elsie"). The assets of her estate included: (1) 692 shares of Chas. A. Stevens & Co. stock ("the Stevens stock"); (2) the Delmar Stock Farm in Crystal Lake, Illinois ("the farm"); and (3) a Chicago residence on South Shore Drive ("the Chicago residence"). Under Illinois intestate law, Elsie and Delmar were entitled to one-half each of the Stevens stock, the farm, and the Chicago residence. Delmar acted as administrator of the estate from April 24, 1934 until March 16, 1945.

On February 2, 1945, Delmar requested of Elsie that she convey her one-half inter-

est in the farm to Delmar in exchange for Delmar's one-half interest in the Chicago residence, two promissory notes, and Delmar's promise that Elsie would receive the farm and Delmar's 346 shares of Stevens stock on the death of the survivor of himself or his wife, Majorie Stevens ("Marjorie"). By deed dated February 24, 1945, Elsie quit-claimed her share of the farm to Delmar and Delmar quit-claimed the Chicago residence to Elsie. Delmar also delivered the two promissory notes but the transactions failed to reflect the terms of Delmar's promise.

On December 30, 1955 and May 1, 1956, respectively, in order to avoid the claims of his creditors, Delmar conveyed to his wife Marjorie without consideration title to the farm and 104⅙ shares of the Stevens stock. Delmar died on March 5, 1959.

On March 21, 1969, the 104⅙ shares of Stevens stock were exchanged for 2,440 shares of Series A Cumulative Convertible Preferred Stock of Hart, Schaffner & Marx ("the stock"). By a Trust Agreement dated March 25, 1971, Marjorie conveyed the stock and the farm to a revocable trust with Home State Bank of Crystal Lake as Trustee for the benefit of persons other than Elsie. Marjorie died on July 25, 1971 with the Trust Agreement still in effect. Both the stock and the farm were included in her gross estate for purposes of determining the federal estate tax due thereon.

On November 1, 1971, Elsie sought to recover the stock and the farm by filing a two-count complaint in the Circuit Court of McHenry County, Illinois against the trustee and beneficiaries of the trust in a cause entitled *Stansbury v. Home State Bank of Crystal Lake, et al.*, No. 71–3089. Count I, as amended, alleged that a constructive trust arose as to the farm and the stock because Delmar breached his fiduciary duty to Elsie by making an unequal distribution of Mary Stevens' estate in February, 1945. Count II, as amended, alleged breach of an oral contract to make a will.

The Circuit Court granted defendants' motion to dismiss on the grounds that Count I was barred by the statute of limita-

tions and that Count II failed to state a cause of action. On September 28, 1976, in *Stansbury v. Home State Bank of Crystal Lake*, 42 Ill.App.3d 58, 355 N.E.2d 613 (2d Dist. 1976), the Illinois Appellate Court reversed the dismissal and remanded the case to the Circuit Court. The Illinois Supreme Court denied defendants' petition for leave to appeal the Appellate Court's decision.

The case went to trial and, on December 28, 1977, the Circuit Court issued its Judgment Decree and Order in favor of Elsie on Count I and in favor of defendants on Count II. The Court found that, at the time of the events in question, a fiduciary relationship existed between Delmar and Elsie and that Delmar breached his duty as a fiduciary by engaging Elsie in a fraudulent transaction. Although the Court found for defendants on Count II of the complaint because of "technical rules of proof", the Court elected to impose a constructive trust on the entire farm and the stock and ordered the Home State Bank of Crystal Lake, as constructive trustee, to convey the farm and the stock to Elsie. Leave to appeal to the Appellate Court was filed and dismissed.

After final determination by the Circuit Court and the Appellate Court, the Successor Executor of Marjorie's estate pursued a previously filed claim for refund of the federal estate taxes paid on the farm and the stock. The instant action for refund of the taxes was filed when the Internal Revenue Service failed to grant plaintiff's claim.

Plaintiff, the Successor Executor of Marjorie's estate, claims that, at her death, Marjorie only owned naked legal title to the property in question. Because the Circuit Court found that Delmar and his successors held the property as constructive trustees for the benefit of Elsie, plaintiff contends that Delmar and his successors had no power to transfer the property to another. Thus, Elsie was at all times the beneficial owner of the property and it was improperly included in Marjorie's gross estate.

The government argues that a constructive trust for the benefit of Elsie only arose when Marjorie died leaving in effect the

revocable trust to which she had transferred the property for the benefit of others. The government claims that, up until that point, Marjorie owned the property outright, subject only to a requirement that it be conveyed upon her death in accordance with Delmar's promise. Thus, the stock and the farm were properly includable in Marjorie's gross estate pursuant to both 26 U.S.C. § 2033 and § 2041.

Although federal law determines which of the decedent's property interests shall be taxed, it is state law that determines the nature and extent of those interests. *Morgan v. Commissioner*, 309 U.S. 78, 80, 60 S.Ct. 424, 425, 84 L.Ed. 585 (1940). In the instant case, the Illinois Circuit Court has made a determination that, due to Delmar's breach of his fiduciary duty to Elsie, the property in question should be impressed with a constructive trust of which Elsie and her heirs are the beneficiaries.

In a federal estate tax controversy, this court is not bound by a state court determination of property interests where the United States was not a party to the proceeding. *See, Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). The *Bosch* Court did point out, however, that it is appropriate to give "proper regard" to the state court decree. *Id.* at 464, 87 S.Ct. at 1782. *See, also, Lake Shore National Bank v. Coyle*, 296 F.Supp. 412 (N.D.Ill. 1968).

This court finds that the state court decree in the instant case is entitled to substantial weight. The state court made its determination in an adversary proceeding in which both parties were allowed to present evidence at trial and submit exhaustive post-trial memoranda. Appeals filed by two of the defendants were dismissed by the Appellate Court. Accordingly, we adopt the state court's determination that Delmar breached his fiduciary duty to Elsie and that Elsie is entitled to the property in question.

We prefer to distinguish, however, between the property that was the subject of the fraudulent transfer, i.e., Elsie's half of the farm, and the property that was the subject of Delmar's promise, i.e., Delmar's half of the farm and Delmar's stock. There is no doubt that a constructive trust was properly imposed on Elsie's half of the farm because of Delmar's breach of his fiduciary duty. That property rightfully belonged to Elsie from the beginning. A constructive trust on the remainder of the property was properly imposed because of Delmar's promise to Elsie and his subsequent conduct, which manifested an intention to maintain all of the property for Elsie's benefit. Delmar promised to leave Elsie the farm and the stock upon the death of the survivor of himself or Marjorie. Both the Illinois Appellate Court and the Circuit Court found that Delmar's actions (and subsequently Marjorie's) provide ample evidence to support a finding that Delmar intended to preserve the whole farm and the stock for the benefit of Elsie. Thus, Marjorie, at most, held only naked legal title to the property with Elsie being the beneficial owner.

The question now before the court is whether the property in which Elsie has a beneficial interest was properly includable in Marjorie's gross estate. The law in Illinois is clear that a constructive trust arises at the time of the wrong. *See, Anderson v. Lybeck*, 15 Ill.2d 227, 154 N.E.2d 259 (1958); *Cohon v. Oscar L. Paris Co.*, 17 Ill.App.2d 21, 29, 149 N.E.2d 472 (1st Dist. 1958). *See also, Scott on Trusts*, § 462.4 (1956). Defendant argues that the wrong arose at the time of Marjorie's death, because, up until that time, the only promise that Marjorie was obligated to fulfill was to convey the farm and the stock upon her death to Elsie or her heirs. This court disagrees.

The Circuit Court found that Delmar owed a fiduciary duty to Elsie as administrator of their mother's estate. Delmar breached that duty when he fraudulently induced Elsie to convey to him her half of their mother's farm. At the time of the fraudulent conveyance, Delmar promised Elsie that the survivor of himself and Mar-

jorie would convey to Elsie or her heirs both the farm and his shares of the Stevens stock. The Circuit Court found that, because of Delmar's breach of his fiduciary duty, Delmar and his successors held the farm and the stock for the benefit of Elsie. Thus, the wrong giving rise to the constructive trust occurred when Delmar breached his fiduciary duty. In addition, this court has found that a constructive trust with respect to the property rightfully held by Delmar also arose at the time of the fraudulent conveyance.

Defendant argues that the property was includable in Marjorie's gross estate because Marjorie held a general power of appointment over it pursuant to 26 U.S.C. § 2041(a)(2). Section 2041(b)(1) provides, inter alia, that "[t]he term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate." 26 U.S.C. § 2041(b)(1).

As successor in interest to Delmar, Marjorie had a duty as successor constructive trustee to maintain and keep the property for the benefit of Elsie. Evidence in the record supports the conclusion that she was aware of that duty. In finding that Count I of Elsie's complaint was not barred by laches and the five-year statute of limitations, the Illinois Appellate Court cited Marjorie's apparent recognition and acknowledgement of Delmar's agreement with Elsie.* Similarly, the Circuit Court, in its Memorandum Opinion, made reference to the fact that "Marjorie's conduct in regard to the preservation of the sales of Stevens stock would indicate that the arrangement [between Delmar and Elsie] was on her mind." *Stansbury v. Home State Bank of Crystal Lake*, No. 71–3089, Mem. Op. at 9.

It is reasonable to assume that, had Marjorie at any time attempted to exercise a

general power of appointment with Elsie's knowledge, Elsie would have had a cause of action against Marjorie for breach of fiduciary duty. The government's argument that, if Marjorie had fulfilled Delmar's promise and conveyed the property *upon her death* to Elsie or her heirs, the property would certainly be includable in Marjorie's gross estate, is irrelevant. The fact remains that in order for the property to be properly includable in Marjorie's gross estate under 26 U.S.C. § 2041, Marjorie must have had a general power of appointment over it. The court finds that she had no such power.

Accordingly, it is ordered that plaintiff's motion for summary judgment be and the same is hereby granted; defendant's motion for summary judgment is denied. Defendant is ordered to refund to plaintiff the overpayment of federal estate taxes in the amount of $90,413.64, plus interest and costs. Plaintiff's request for attorney's fees is denied.

---

* In the probate proceedings of Delmar's decedent estate, Marjorie had petitioned for authority to sell all 287 shares of the Stevens stock. A conference between the attorneys for Delmar's estate and Elsie's son, Thomas Stansbury, an attorney, resulted in the sale of only 45 of those shares. The Appellate Court found that the remaining 242 shares coupled with the

104⅙ shares which Delmar had transferred to Marjorie in 1955 when creditors were filing against him were equal (except for one-sixth share) to the 346 shares which Delmar had allegedly agreed to transfer to Elsie upon the death of Delmar and Marjorie. *Stansbury v. Home State Bank of Crystal Lake, supra*, 42 Ill.App.3d at 63, 355 N.E.2d at 618.