In re STORAGE TECHNOLOGY CORPORATION, et al., Debtors.

STORAGE TECHNOLOGY CORPORATION, Plaintiff,

v.

STORAGE TECHNOLOGY FINANCE CORPORATION; Bank of America, N.T. & S.A.; Bankers Trust Company; Chase Manhattan Bank, N.A.; Citibank, N.A.; Continental Illinois National Bank and Trust Company of Chicago; Credit Suisse; Dresdener Bank, N.A.; First Interstate Bank of California; First National Bank of Atlanta; First National Bank of Chicago; First Pennsylvania Bank, N.A.; Lloyd's Bank International, Ltd.; Mellon Bank, N.A.; Norwest National Bank of Minneapolis; Security Pacific National Bank; Societe Generale; State Street Bank & Trust Co.; and Wells Fargo Bank, N.A., Defendants.

OFFICIAL LIMITED PURPOSE NON–STFC COMMITTEE, Plaintiff-in-Intervention on behalf of Storage Technology Corporation,

v.

STORAGE TECHNOLOGY FINANCE CORPORATION, et al., Defendants.

Adv. No. 85 J 0258.

United States Bankruptcy Court, D. Colorado.

Nov. 7, 1985.

Daniel S. Hoffman, John R. Webb and Boyd N. Boland, of Holme Roberts & Owen, Denver, Colo. and Herman L. Glatt, of Stutman, Treister & Glatt, P.C., Los Angeles, Cal., for Storage Technology Corp.

Richard H. Shaw, Barry L. Wilkie and Marc Morris, of Shaw, Spangler & Roth, Denver, Colo., for Tom Connolly, Trustee of Storage Technology Finance Corp.

James A. Jablonski, James H. Turner and Robert Padjen, of Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, Colo., and Theodore Gewertz and Amy R. Wolf, of Wachtell, Lipton, Rosen & Katz, New York City, for defendant Banks.

Harvey R. Miller, James W. Quinn and Marcia L. Goldstein, of Weil, Gotshal & Manges, New York City, for Citibank, as agent for the defendant Banks.

Walter A. Steele, of White and Steele, Denver, Colo., and Ralph R. Mabey, Steven J. McCardell, Kenneth L. Cannon, III and Lon A. Jenkins, of LeBoeuf, Lamb, Leiby & MacRae, Salt Lake City, Utah, for the Official Limited Purpose Non-STFC Committee.

## ORDER REGARDING MOTIONS TO DISMISS

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

Despite repeated admonishments by this Court, counsel seem compelled to deluge

this Court, and opposing counsel with paper. This case was filed on May 10, 1985, and to this date the issues are not yet joined even though the files are five (5) inches thick (by actual measurement). Counsel are of the apparent belief that the quality of their briefs is measured in pounds and they forget that the readership of a document is inversely proportional to its length.

The issues before the Court at this time are whether certain complaints or counterclaims should be dismissed for failure to state a claim upon which relief can be granted. The standard which this Court must apply is clear and unambiguous. All facts alleged in the subject pleadings must be construed in the light most favorable to the party opposing the motion to dismiss and, under the facts so construed, whether it is clear beyond a resonable doubt that the claimant is not entitled to relief. Yet these experienced counsel continually assert and argue facts in their briefs *ad nauseam* that are not before the Court. In some instances "preliminary" statements in a brief go on for eighteen pages before any argument or law is presented. Footnotes abound espousing the law from remote jurisdictions explaining irrelevant points. If counsel want to write in that style, I suggest they seek a publisher and get out of the practice of law. Legal briefs are to aid the Court, not to glorify the author. Counsel should be cognizant of the fact that this type of activity will not go unnoticed at the time of approval of legal fees.

In light of the fact that the parties have submitted far in excess of three hundred and fifty (350) pages of briefs in this matter, the Court can perceive of no reason to hear oral arguments, therefore, the hearing scheduled for November 19, 1985, at 1:30 p.m., is vacated.

The parties herein will be referred to as follows:

Storage Technology Corporation—"STC"
Official Limited Purpose Non-STFC Committee—"Committee"
Storage Technology Finance Corporation—"STFC"
All remaining defendants—"Banks"

### STC Motion to Dismiss or Strike Counterclaims of Banks

The Banks allege as follows:

STFC is a wholly owned subsidiary of STC, which dominated and controlled its affairs and has continued such domination and control to the present date. All of the officers, directors and employees of STFC are or were officers, directors and employees of STFC. STFC was established by STC in 1978 as a captive finance subsidiary of STC, in order to raise funds based upon the separate financial strength of STFC in the commercial paper market and, if necessary, from potential lenders who were unwilling to lend on the credit of STC alone, but who were willing to lend to an entity, the assets of which not only would be sufficient to repay their loans but also would be free from the claims of creditors of STC.

The Banks are the sole creditors of STFC, which, at the time STC and STFC filed for bankruptcy, was indebted to them for money lent on an *unsecured* basis in the approximate amount of $110,000,000. The loans made by the Banks to STFC were initially made and subsequently continued in reliance on a continuous pattern and course of conduct whereby STC represented and caused STFC to make written representations and reports that STFC was a separate corporate entity with an independent financial structure and that STC and STFC were in compliance with the Operating Agreement. The proceeds of the loans were used by STFC for the purchase of Customer Obligations (receivables) from STC pursuant to the Operating Agreement.

On March 29, 1978, STC and STFC caused a Financing Statement to be filed under the Colorado Uniform Commerical Code, naming STC as debtor and STFC as secured party, with respect to Customer Obligations conveyed or to be conveyed to STFC pursuant to the Operating Agreement. However, no continuation statement with respect to the Financing Statement

was subsequently filed by either STC or STFC.

The Operating Agreement was designed to ensure that STFC would at all times have sufficient assets separate and apart from the assets of STC to repay its indebtedness to the creditors of STFC. These assets consisted of the Customer Obligations and the proceeds of the collections upon the Customer Obligations. As a result of these representations, which were contained in, among other things, financial statements, compliance certificates and borrowing base reports, the Banks, who by amendment to the Operating Agreement became express third party beneficiaries thereof entitled to enforce the obligations of STC thereunder, were induced to lend money and to forbear from declaring defaults on their existing loans.

Documents and financial statements filed with the Securities and Exchange Commission on September 28, 1984, by STC for itself and its subsidiaries do not include STFC as one of the consolidated subsidiaries and do not include as assets of STC the Customer Obligations which had been sold to STFC.

As of the filing date, STFC indicated that it had in excess of $140,000,000 in assets, consisting of Customer Obligations and the proceeds thereof, as reflected in the STFC Chapter 11 petition, which was prepared under the direction and control of STC by the attorneys for STFC who were also the attorneys for STC and which was signed by the president of STFC, who was also an employee and officer of STC.

The STFC Banks contend in their counterclaims that STC, by virtue of its complete domination of STFC, controlled both sides of the STC–STFC transactions and that any technical defect in STFC's position was caused by STC's own wrongful conduct which STFC could not have prevented, since it did not and could not act independently of STFC. Thus, the counterclaims allege that any alleged voidability or lack of interest on the part of STFC in the Customer Obligations and proceeds was caused solely by the wrongful acts of STC

and STC's breaches of its fiduciary obligations to STFC and its creditors, including:

(a) STC's knowing or reckless failure to file or to cause STFC to file a continuation statement with respect to the Financing Statement;

(b) STC's knowing or reckless failure to fulfill its obligations under the Operating Agreement to (i) deliver to STFC the documentation which STC claims was necessary to effectuate the transfer of Customer Obligations to STFC; (ii) deposit the proceeds of Customer Obligations owned by STFC, in respect of which STC had acted as agent for STFC for purposes of collection, in a bank account in STFC's name and under its control, and (iii) pay such proceeds to STFC at the end of each accounting period; and

(c) STC's use of proceeds of Customer Obligations which were required to be held solely as agent for STFC, for its own purposes and conversion to its own use of Customer Obligations which had been sold to STFC.

As further grounds for the imposition or recognition of a constructive trust on the Customer Obligations and proceeds existing on the filing date in favor of the STFC Banks (as opposed to STFC itself), the counterclaims allege that in addition to the foregoing conduct on the part of STC *vis-a-vis* STFC, STC engaged in additional wrongful and fraudulent acts with respect to the STFC Banks, such as:

(a) causing STFC to obtain and retain financing from the Banks by issuing financial statements and borrowing base reports which showed that STFC owned specified amounts of Customer Obligations and the proceeds thereof, notwithstanding the alleged lack of perfection of STFC's interest in the Customer Obligations;

(b) causing STFC to execute and deliver false compliance reports and other documentation to the Banks in which an officer of STFC certified, *inter alia,* that

no events of default existed under the loan agreements with the Banks; and (c) causing STFC to incur debts to the Banks which were beyond STFC's ability to repay, by causing STFC to borrow funds from the Banks and transfer such funds to STC without receiving a reasonably equivalent value therefor.

If it is determined that STFC did not become the owner of the Customer Obligations and proceeds as of the date bankruptcy was filed, or if STFC's interest would otherwise be voidable pursuant to 11 U.S.C. § 544, the First Counterclaim seeks to have this Court impose a constructive trust on such Customer Obligations and proceeds.

The Second Counterclaim again assumes that STC is determined to have had an ownership interest in the Customer Obligations and proceeds as of the date of filing for bankruptcy. It seeks to have this Court declare that STC, as trustee of a constructive trust, held mere legal title to the Customer Obligations and proceeds thereof and that STFC held equitable title thereto, and that accordingly, pursuant to 11 U.S.C. § 541(d), the Customer Obligations and proceeds in an amount not less than $140,000,000 were property of STFC's estate on the date of filing for bankruptcy and continue to be property of STFC's estate and not property of STC's estate.

As alternative relief to the constructive trusts sought by the First and Second Counterclaims, the Third Counterclaim seeks to have this Court declare that STC holds the Customer Obligations as trustee of a resulting trust in favor of STFC and its creditors. This counterclaim assumes the correctness of STC's claim that STC did not execute the documentation necessary to effectuate the transfer of the Customer Obligations to STFC and that STC allegedly did not file or cause STFC to file a continuation statement, but asserts that STFC's alleged lack of interest in the Customer Obligations is solely the result of STC's failure to execute and file or to cause STFC to execute and file the requisite documentation to ensure that STFC was the owner of the Customer Obligations and that its interest therein would not be subject to avoidance.

As further support for the recognition of a resulting trust, the Third Counterclaim points to the conduct of STC and STFC prior to the commencement of this adversary proceeding, which evidences the fact that, notwithstanding the alleged lack of documentation and continuation statement, it was the intention of STC and STFC that STFC would own $140,000,000 of Customer Obligations and that as of the Filing Date such Customer Obligations would be the property of STFC's estate.

The Fourth, Fifth and Sixth Counterclaims seek to set aside certain prepetition transfers by STFC to STC as fraudulent transfers, and are asserted derivatively on behalf of STFC. Inasmuch as the position asserted by STC in its Complaint is, in essence, that STFC transferred to STC the monies lent to it by the STFC Banks and the proceeds of collections of Customer Obligations, but received no consideration from STC in exchange therefor, these counterclaims seek to have this Court set aside the transfers from STFC to STC as fraudulent transfers and restore the transferred monies to the estate of STFC under 11 U.S.C. § 548(a).

STC asserts that the trust claims should be dismissed because:

1. The Federal Bankruptcy Law preempts state law imposing such trusts.

2. The Banks have failed to allege that the *res* of the trust can be traced.

3. The Banks have no standing to assert STFC's interest in the Customer Obligations.

4. Prepetition wrongs of the Debtor do not affect the powers of the Debtor-in-Possession.

STC, as a Debtor-in-Possession ("DIP"), is entitled to exercise all of the rights and powers of a trustee. 11 U.S.C. § 1107(a). Also, as a DIP, it possesses the rights of a hypothetical perfected judicial lien creditor as of the date of the filing of the bankruptcy petition under 11 U.S.C. § 544(a)(1).

There is no disagreement on these fundamental points.

However, STC argues that to allow the imposition of a trust would nullify the federal preemption doctrine in that such action would allow a "secret lien" claimant to gain priority over the DIP in controversion of § 544. STC argues that a DIP acting under § 544 prevails over an unperfected security interest regardless of the prepetition misconduct of the Debtor and cites *In re Brent Exploration, Inc.*, 31 B.R. 745 (Bankr.Colo.1983). That case is easily distinguished on its facts and in any case, is contrary to the great weight of authority if it means that under no circumstances can claims and defenses under state law be successful *vis-a-vis* a Trustee under § 544.

Because STC as a debtor and STC as a DIP are legally distinct entities, STC argues that any pre-petition wrongdoing by STC as a debtor does not affect STC as a DIP. The Court has no disagreement with this general proposition. But STC as a DIP succeeds only to the interests and rights of STC the debtor. If those rights are subject to a constructive trust then STC as a DIP would hold bare legal title to the *res* and the trust beneficiary would hold equitable title.

The law is clear in Colorado that, with regard to personalty, a beneficiary of a constructive trust or other equitable lien prevails over a judicial lien creditor. The law may be different with regard to realty, but for personal property the rule has remained unchanged for almost ninety years, notwithstanding the adoption of the Uniform Commercial Code.

It matters not that the Banks have failed to allege that they can "trace" to an identifiable *res*, they have indentified in the pleadings what they perceive that *res* to be. The "tracing" is a matter of proof at trial.

■ The Banks allege that they are the express third party beneficiaries of the Operating Agreement between STC and STFC. That allegation, taken as true at this point, clearly gives them standing independent of STFC to assert STFC's interest in the Customer Obligations.

■ The Banks have sufficiently pled their right to the imposition of a constructive or resulting trust, and therefore STC's Motion to Dismiss the Banks' first three counterclaims must be denied.

■ The remaining counterclaims of the Banks seek to set aside certain transfers from STFC to STC under § 548(a). Such powers are given only to the Trustee of STC and the Banks have no standing to bring such actions, and STC's Motion to Dismiss should be granted as to those counterclaims.

### STC's Motion to Dismiss or Strike Counterclaims of STFC

STFC has set forth seven counterclaims, the first six of which are substantially the same as the counterclaims filed by the Banks. The first three seek imposition of a constructive trust, equitable lien or resulting trust. For the reasons stated *supra*, the allegations of STFC, if proven, would support a claim for relief. Accordingly, STC's Motion to Dismiss these three counterclaims must be denied.

■ The Fourth, Fifth, and Six Counterclaims are to set aside certain transfers from STFC to STC under § 548(a). A DIP or a Trustee has standing to bring such actions. The original counterclaims were filed by STFC as DIP. Subsequently, a Trustee has been appointed for STFC and he is competent to pursue the counterclaims for the benefit of STFC's estate. The allegations clearly state causes of action under § 548(a), and therefore STC's Motion to Dismiss these three counterclaims must be denied.

■ STFC sets forth a seventh counterclaim under § 510 and seeks equitable subordination of STC's claim to the Customer Obligations. STC's asserted interest in the Customer Obligations is not a "claim" under § 101(4) and therefore there is no "claim" which can be subordinated under § 510. Therefore, STC's Motion to Dismiss

will be granted as to STFC's Seventh Counterclaim.

### Banks' and STFC's Motion to Dismiss Complaint of the Committee

These motions challenge the standing of the Committee to bring its Complaint under §§ 544, 547, and 550.

When the Committee was originally formed and authorized, this case was in a much different posture. STC and STFC were both plaintiffs being represented by the same attorneys. Now STFC is a defendant, with its own counsel and a Trustee.

In its complaint, the first two claims under § 544 are essentially recast pleadings of STC's complaint. STC is vigorously pursuing these claims and there is no need for the Committee's intervention.

In its last three claims, the Committee asserts preferential transfers from STC to STFC and to the Banks under §§ 547 and 550. Normally such actions are the sole province of the Trustee or DIP. In some cases, the courts have allowed a committee to bring such actions when the committee has requested the DIP to prosecute the actions, the request has been refused, the Committee has demonstrated a colorable claim that would benefit the estate and the DIP has unjustifiably refused to act.

The Committee's Complaint fails to even allege the request and refusal. It also fails to assert any grounds that would lead this Court to conclude STC has unjustifiably refused to act.

In light of the Committee's failure to even allege the requisite facts that would grant it standing, its Complaint does no more than muddy the waters in this adversary and complicate the issues before the Court. The Committee should not forget its original charge, i.e. to "review" this adversary. If, in the future, the Committee believes it can meet the elements necessary to grant it standing, it may apply to the Court for a determination and permission to prosecute such preferential transfer claims.

It is, therefore,

ORDERED that:

(1) STC's Motion to Dismiss or Strike the First, Second, and Third Counterclaims of the Banks is denied.

(2) STC's Motion to Dismiss or Strike the Fourth, Fifth, and Sixth Counterclaims of the Banks is granted.

(3) STC's Motion to Dismiss the First, Second, Third, Fourth, Fifth, and Sixth Counterclaims of STFC is denied.

(4) STC's Motion to Dismiss the Seventh Counterclaim of STFC is granted.

(5) STFC's and the Banks' Motions to Dismiss the Committee's Complaint are granted, without prejudice.

(6) STC shall file an answer to the remaining counterclaims of STFC and the Banks within ten (10) days of the date of this Order.

(7) A pre-trial and scheduling conference, with local counsel only, shall be held on *November 19, 1985*, at *1:30* p.m., in Courtroom C, U.S. Bankruptcy Court, 400 Columbine Building, 1845 Sherman Street, Denver, Colorado. Counsel shall be prepared to schedule all discovery, pre-trials and trial at that time.