**In re DVI, INC., DVI Financial Services, Inc., and DVI Business Credit Corporation.**

**No. 03–12656.**

United States Bankruptcy Court, D. Delaware.

Feb. 26, 2004.

Raymond H. Lemisch, Esquire, Bradford J. Sandler, Esquire, Adelman, Lavine, Gold and Levin, P.C., Wilmington, DE, Gary M. Schildhorn, Esquire, Kathleen Torbit, Esquire, Adelman, Lavine, Gold and Levin, P.C., Phildelphia, PA, for debtor DVI.

J. Andrew Rahl, Esquire, Michael J. Venditto, Esquire, Luma S. Al–Shibib, Esquire, Anderson, Kill & Olick, P.C., New York City, Francis A. Monaco, Jr., Esquire, Joseph J. Bodnar, Esquire, Monzack & Monaco, P.A., Wilmington, DE, for unsecured creditors committee.

Richard A. DeAngelis, Esquire, Wilmington, DE, United States Trustee.

Donald J. Detweiler, Esquire, Tara L. Lattomus, Esquire, Saul Ewing LLP, Wilmington, DE, for creditors.

## OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Debtors' Motion to sell certain assets of Third Coast Capital, a division of DVI Financial Services, Inc. ("DVIFS") and the objection of Miroslav Anic ("Anic") asserting that he has a constructive lien on the property to be sold. Anic has also filed a Motion for relief from the stay to permit him to seek the imposition of such a lien on the Debtors' assets. For the reasons set forth below, we grant the Debtors' Motion and deny Anic's Motion.

## I. *BACKGROUND*

On August 25, 2003, DVI, Inc., and DVI Business Credit Corporation (collectively "the Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code. The Debtors have continued to operate as debtors in possession since that date. The Debtors are in the business of providing lease and loan financing to healthcare providers for the acquisition of sophisticated medical equipment.

Prior to filing their bankruptcy cases, Anic was involved in a business venture named Third Coast Capital which became a division of DVIFS. Disagreements arose, and on December 29, 2000, Anic filed suit against DVI and DVIFS in the District Court for the Northern District of Illinois alleging fraud, unjust enrichment, conversion, unfair competition, deceptive business practices, breach of contract and breach of employment agreement arising, in part, from the transfer of Third Coast Capital to the Debtors. In that complaint, Anic sought, inter alia, the imposition of a constructive trust against the Third Coast Capital assets which he had transferred to the Debtors. The Debtors have vigorously defended that suit and, to date, no relief has been entered in that action.

On December 15, 2003, the Debtors filed a Motion for authority to sell and/or assume and assign certain assets owned by Third Coast Capital ("the Sale Motion"). Anic filed an objection to that sale asserting that the assets to be sold are not property of the estate because the Debtors hold them in constructive trust for him. Anic also filed a Motion for relief from the stay seeking authority to continue the Illinois action to obtain a constructive trust and to enjoin the sale.

At the hearing on the Sale Motion, the Debtors presented evidence that the assets consist of loans extended by the Debtors to Bell Geospace, Inc. ("Bell"). The Debtors established that Bell itself had had financial difficulties, had filed a chapter 11 petition and was currently in default of its obligations to the Debtors under its confirmed plan of reorganization. As a result, the Debtors have not received any principal payments on the loans for approximately four years and do not anticipate

---

**1.** This Opinion constitutes findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Rule 9014.

receiving any payments from Bell in the near future. Consequently, the Debtors propose to sell their loans to Bell's primary equity investor and bridge financier at a discount of 45%.

Anic testified that the offer presented was not the highest and best because of his offer for these same assets. It appears, however, that his offer differed from the offer presented by the Debtors because it was for the purchase of these and other assets owned by Third Coast Capital. Furthermore, Anic's offer provided that the purchase price would be set off against his asserted claim in excess of $12 million. Since the Debtors contest the validity of Anic's claim, they did not accept his offer.

Anic also asserted that the Debtors could not sell the assets because he had a constructive trust on them. The Debtors dispute the existence of a constructive trust (and Anic's allegations of fraud) and argue that, even if he had a constructive trust, the Debtors could avoid it under the strong-arm provisions of section 544. Because the sale must close by March 31, 2004, the parties agreed that the Court could decide this issue on an expedited basis without the necessity for filing an adversary proceeding. Accordingly, the parties have fully briefed the issue and oral argument was heard on February 4, 2004.

## II. *JURISDICTION*

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B), (G), (K), (M) & (O).

## III. *DISCUSSION*

The preliminary issue is whether the Debtors may sell the Third Coast Capital property. Although Anic acknowledges that the Debtors have title to the Third Coast Capital property, he asserts that he holds equitable title and that the Debtors merely hold the property in constructive trust for him. The parties agree that our inquiry must start with a determination of when a constructive trust arises under applicable state law, which the parties agree is Illinois.

### A. *Illinois Constructive Trust Law*

The Debtors assert that, unlike most states, Illinois law provides that a constructive trust arises not when the wrongful act occurs but only when a court issues an order imposing such a trust. They assert that Illinois law treats a constructive trust as a remedy, not a property interest. They rely on two Illinois cases which they assert stand for this proposition: *Suttles v. Vogel*, 126 Ill.2d 186, 127 Ill.Dec. 819, 533 N.E.2d 901 (1988) and *Smithberg v. Illinois Mun. Ret.*, 192 Ill.2d 291, 248 Ill.Dec. 909, 735 N.E.2d 560 (2000).

Anic relies on earlier Illinois authority for the proposition that, as in other states, a constructive trust is imposed as of the date of the wrongful act. *See, e.g., Stansbury v. United States*, 543 F.Supp. 154 (N.D.Ill.1982), *aff'd*, 735 F.2d 1367 (7th Cir.1984) and cases cited therein. The *Stansbury* case does hold exactly what Anic represents it does: "The law in Illinois is clear that a constructive trust arises at the time of the wrong." *Id.* at 157. The issue was squarely before the *Stansbury* Court because the date when the constructive trust arose would determine whether the property in question was taxable as part of a decedent's estate. The Court concluded that the constructive trust arose not when the Court entered an order, but when the wrong occurred. *Id.* at 158.

In oral argument, the Debtors asserted that *Stansbury* has been effectively over-

ruled by the cases that they cite. Neither of the cases cited by the Debtors, however, mention the *Stansbury* case or expressly state that they are overruling prior Illinois precedent on this point.[2] While the quotes relied on by the Debtors appear to support their argument, upon closer reading of the cases, we conclude that Anic's recitation of Illinois law is the correct one.

The Debtors quote *Suttles* for the proposition that "A constructive trust is created *when* a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property." 127 Ill.Dec. 819, 533 N.E.2d at 904 (emphasis added). However, at most this statement was dicta. The *Suttles* Court was not asked to determine *when* a constructive trust arises under Illinois law.[3] Instead, the issue before the Court was whether the plaintiff had even stated a cause of action for constructive trust sufficient to support a default judgment. *Id.* The quoted passage from *Suttles* was one of a series of general statements of the circumstances under which a constructive trust will be imposed by the courts. It did not, as the Debtors suggest, hold that a constructive trust arises only after a court makes a finding of fraud or wrongdoing.

The Debtors also cite *Smithberg* for the proposition that "a constructive trust is created when a court declares the party in possession of wrongfully acquired property the constructive trustee of that property

because it would be inequitable for that party to retain possession of it." (Debtors' Brief at 10.) However, once again, that quote was merely part of a description of the circumstances under which a constructive trust will be imposed; it was not a ruling as to *when* the trust arises. *Smithberg*, 248 Ill.Dec. 909, 735 N.E.2d at 566.

In fact, the actual ruling in *Smithberg* belies the Debtors' assertion of Illinois law. In that case, the Court did find that a constructive trust was warranted and, as a result, held that a trust would be imposed on death benefits in favor of the decedent's first wife. This conclusion was premised on a finding that the decedent had agreed, before his death, to make his first wife the beneficiary but had not properly filed the form. On equitable grounds, the Court deemed the beneficiary form filed before the decedent's death (and notably before the Court's ruling). *Id.* at 565. In so holding, the Court relied on the equitable principle that "equity will regard as done [past tense] that which ought to be done." *Id.* at 564. Thus, it is clear that the actual holding of *Smithberg* (rather than random quotes from the case) supports Anic's position.

Accordingly, we conclude that "The law in Illinois is clear that a constructive trust arises at the time of the wrong." *Stansbury*, 543 F.Supp. at 157. Thus, if Anic has a constructive trust in the property in question, it arose prior to the petition date when the alleged wrongdoing occurred.[4]

**2.** The Debtors also cite *Bodenstab v. J.R. Blank & Assoc., Inc.*, 1990 WL 17087 (N.D.Ill. 1990). The Court in that case concluded that a constructive trust may not be imposed prior to a trial on the merits. *Id.* at *2. It acknowledged the ruling in *Stansbury* to the contrary and sought to distinguish it by asserting that the constructive trust does accrue at the time of the wrongdoing although it is not imposed until a court so orders. *Id.* at *3. We do not find the distinction to be of any significance.

**3.** Further, the case which *Suttles* cites for the quoted proposition was similarly not asked to determine *when* a constructive trust arises under Illinois law. *See, e.g., Charles Hester Enters., Inc. v. Illinois Founders Ins. Co.*, 114 Ill.2d 278, 102 Ill.Dec. 306, 499 N.E.2d 1319 (1986) (affirming dismissal of suit seeking imposition of constructive trust for failure to state a cause of action).

**4.** *But see, In re Foos*, 183 B.R. 149, 159 (Bankr.N.D.Ill.1995). While Judge Barliant concluded in that case that constructive trusts

B. *Conflict between Sections 541(d) and 544*

■ The Debtors assert that, even assuming that Anic has a valid constructive trust claim, it can be avoided pursuant to section 544 because it was an unperfected interest in property subject to the rights of a hypothetical lien creditor. Anic asserts that his rights as a constructive owner of the property are preserved by section 541(d) and are paramount to the Debtors' interests.

Anic cites to controlling Third Circuit law for the proposition that property held by a debtor in constructive trust for another is excluded from property of the estate pursuant to section 541(d) and, as such, cannot be used to pay the debtor's general creditors. *See, e.g., Official Comm. of Unsecured Creditors v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 997 F.2d 1039, 1059 (3d Cir.1993) ("Congress clearly intended the exclusion created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust"). *Accord Universal Bonding Ins. Co. v. Gittens & Sprinkle Enter., Inc.,* 960 F.2d 366, 372 (3d Cir.1992); *EBS Pension LLC v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.),* 243 B.R. 231, 235 (Bankr.D.Del. 2000); *In re DeLauro,* 207 B.R. 412, 416 (Bankr.D.N.J.1997).

However, that general citation of constructive trust law under section 541(d) does not deal with the issue presented: namely, whether a constructive trust can be avoided by operation of the avoidance powers of the debtor under section 544.

Numerous Courts and commentators have noted a tension between the test of §§ 541(a), 541(d), and 544(a). "[T]hese sections are not always easily reconciled because § 541(d) excludes certain equitable interests from the estate of a bankrupt while § 544(a) permits the trustee to bring certain tainted property into the control of the estate."

*In re Paul J. Paradise & Assocs.,* 249 B.R. 360, 366 (D.Del.2000). The Courts are divided on how to resolve this apparent conflict.

The majority of courts conclude that section 541(d) is subject to the rights of the debtor to avoid an unperfected interest in property under other provisions of the Bankruptcy Code. *See, e.g., Belisle v. Plunkett,* 877 F.2d 512, 516 (7th Cir.1989) (concluding that leasehold interest which debtor held in constructive trust for others could be brought into the estate under the strong arm provisions of § 544); *In re General Coffee Corp.,* 828 F.2d 699, 704–06 (11th Cir.1987) (holding "that § 544(a) would bring the trust property into the estate in spite of § 541(d)"); *Paul Paradise,* 249 B.R. at 368 (holding that " § 541(d) should not be construed to limit the Trustee's ability to bring property into the estate through the 'strong-arm' powers of § 544").

A minority of courts, however, conclude that section 541(d) prevails over the avoidance rights of a trustee under section 544. *See, e.g., In re Quality Holstein Leasing,* 752 F.2d 1009, 1013 (5th Cir.1985) (holding that § 541(d)'s limitation on the scope of the bankruptcy estate prevails over the trustee's strong-arm powers under § 544 of the Code); *Universal Bonding,* 960 F.2d at 372 n. 2 (same).

Anic acknowledges, however, that the statement in *Universal Bonding* that section 541(d) prevails over section 544 was

under Illinois law arise only when a court decrees it, he did so in reliance on *Suttles*. Since our analysis of *Suttles* demonstrates

that it does not support such a proposition, we decline to follow *Foos*.

mere dicta; that issue was not before the Court. Additionally, the Court in *Quality Holstein* was interpreting a prior version of section 541(d)[5] when it concluded that "Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own." 752 F.2d at 1013.

In *Belisle*, the Seventh Circuit responded:

> With all due respect to the Fifth Circuit, we believe that allowing the estate to 'benefit from property that the debtor did not own' is exactly what the strong-arm powers are about: they give the trustee the status of a bona fide purchaser for value, so that the estate contains interests to which the debtor lacked good title.

877 F.2d at 516. The Seventh Circuit examined the language of the statute closely and held that there really is no conflict between section 541(d) and section 544(a). *Id.* at 515.

We agree with the analysis of the Seventh Circuit and the other courts adopting the majority view. Rather than providing that property subject to a trust can never be property of the estate, section 541(d) actually provides that property held in trust does not become property of the estate under section 541(a)(1) or (2). However, property which is recovered by the estate as a result of the avoidance powers under section 544 comes into the estate as the result of section 541(a)(3). Thus, we conclude that there is no conflict between the two provisions. However,

this does not, as the Debtors seem to suggest, finish our inquiry.

## C. *Section 544 Avoiding Power*

■ The Debtors assert that, because Anic's constructive trust has not yet been recognized by the court in Illinois, it is an unperfected interest in property that is avoidable by the Debtors under section 544. *See, e.g., In re Mark Benskin & Co., Inc.,* 59 F.3d 170 (6th Cir.1995) (under Tennessee law, party had no equitable interest unless court had impressed constructive trust on property before bankruptcy was filed); *In re Omegas Group, Inc.,* 16 F.3d 1443, 1451 (6th Cir.1994) (holding that, without a pre-petition order, a party asserting constructive trust has a mere unsecured claim); *In re Markair, Inc.,* 172 B.R. 638, 642 (9th Cir. BAP 1994) (holding that constructive trust is a remedy which is inchoate until court imposes it); *In re Foos,* 183 B.R. 149, 154–60 (Bankr.N.D.Ill.1995) (same); *In re Morken,* 182 B.R. 1007, 1022–23 (Bankr.D.Minn. 1995) (same).

Anic argues, however, that the cases relied upon by the Debtors are distinguishable because they involve the avoidance power under section 544(a)(3) which is not applicable to this case. We agree with Anic that cases involving section 544(a)(3) are not applicable because they involve the avoidance of an unperfected lien on real estate. Section 544(a)(3) gives a debtor the rights of a bona fide purchaser which under state law prevails over an unrecorded interest in real property.

**5.** Before the 1984 amendments, section 541(d) provided that property became property of the estate under section 541(a) only to the extent of the debtor's interest. After the amendments, section 541(d) stated that property became property of the estate under section 541(a)(1) or (2) only to the extent of the debtor's interest. This is significant because it is section 541(a)(3) which provides that property of the estate includes any interest in property that the trustee recovers after the transfer of the property is avoided under, inter alia, section 544.

Anic further argues that, under sections 544(a)(1) and (2) on which the Debtors rely here and applicable Illinois law, the constructive trust asserted by Anic prevails over the Debtors' rights. These sections provide that a debtor may avoid any transfer of property of the debtor that is voidable by:

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1) & (2).

Under applicable Illinois law, neither status would allow the Debtors to avoid a constructive trust. *See, e.g., Software Customizer, Inc. v. Bullet Jet Charter, Inc., (In re Bullet Jet Charter, Inc.)*, 177 B.R. 593, (Bankr.N.D.Ill.1995). *See also, In re Storage Tech. Corp.*, 55 B.R. 479, (Bankr. D.Col.1985).

The Court in *Bullet Jet* held that the rights of a hypothetical judicial lienholder do not prevail over an equitable interest holder under Illinois law because the rights of a judicial lien holder are not equivalent to those of an innocent purchaser *for value. Id.* at 605. It held that "The equitable rights of Software, being first in time, take priority over any right that might arise from the avoiding powers. Those avoidance rights are junior to the equitable ownership rights of Software that take precedence over a hypothetical

judgment lien creditor under state law." *Id.* at 604.

The Debtors argue, however, that an unperfected constructive trust can be avoided by a judicial lien holder under Illinois law. *See, e.g., In re T. Brady Mech. Servs., Inc.*, 133 B.R. 441, 446 (Bankr.N.D.Ill.1991) (holding that hypothetical lien creditor can defeat an equitable lien). However, unlike the Court in *Bullet Jet,* the Court in *Brady Mechanical* reached its conclusion without any analysis of the respective rights of an equitable lien holder versus a lien creditor.

We agree with the analysis of the Court in *Bullet Jet.* While the status of a hypothetical lien creditor as of the petition date may create a lien in real property, it does not automatically create a lien in personal property (which is at issue here). Therefore, it would not be superior to a constructive trust claim on personal property. Even if the Debtors did obtain a lien on personal property under section 544(a)(1) or (2), that lien would arise only as of the petition date. Since the constructive trust arises when the wrong occurs (in this case, pre-petition), it is superior to the Debtors' rights because it is first in time.

Therefore, we conclude that the avoidance powers of section 544(a)(1) and (2) do not allow the Debtors to avoid Anic's putative constructive trust rights.

### D. *Sale Free and Clear under section 363*

█ The Debtors assert nonetheless that they may sell the Third Coast Capital property free and clear of any interest that Anic has in the property under section 363(f)(4). Section 363(f)(4) provides: "The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if . . . (4) such

interest is in bona fide dispute." 11 U.S.C.A. § 363(f)(4).

There is ample authority to support the Debtors' position. *See, e.g., In re Gulf States Steel, Inc.*, 285 B.R. 497, 507 (Bankr.N.D.Ala.2002) (holding that § 363(f)(4) allows sale of property subject to dispute "so that liquidation of the estate's assets need not be delayed while such disputes are being litigated"); *In re Collins*, 180 B.R. 447, 452 (Bankr.E.D.Va. 1995) (holding that court need not resolve the dispute, just determine its existence); *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr.N.D.Ill.1991) (holding that there must be an objective basis for a legal or factual dispute).

Anic asserts, on the contrary, that the Debtors cannot sell any property that they do not own. *See, e.g., Universal Bonding*, 960 F.2d at 372 (bankruptcy law does not allow trustee to distribute other people's property to estate creditors; *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 263 (3d Cir.2000) (recognizing that property not part of the bankruptcy estate is not subject to a § 363 sale); *In re Mariner Post–Acute Network, Inc.*, 267 B.R. 46, 59 (Bankr.D.Del.2001) (recognizing that bankruptcy court's jurisdiction does not extend to property that is not part of the debtor's estate).

The Debtors assert that the cases cited by Anic are distinguishable because either there was no motion to sell the property under section 363 or there was no dispute regarding the existence of a constructive trust. Here, the Debtors assert that they have hotly contested Anic's assertion of a constructive trust (as evidenced by their expenditure of almost $1 million in attorneys' fees in the Illinois action). They further argue that, if they are permitted to sell the property free and clear of Anic's interests, that his interests (if any) would still attach to the proceeds of the sale. The Debtors assert that the sale should be permitted and agree to escrow the proceeds pending a determination of whether and to what extent Anic has a constructive trust on them.

Courts have permitted the sale of property free and clear of constructive trust claims or equitable liens, so long as they attach to the proceeds of sale. *See, e.g., In re Wells*, 296 B.R. 728, 734 (Bankr.E.D.Va. 2003) (holding that trustee could sell property free and clear of equitable interest in property with interest to attach to proceeds); *In re Bedford Square Assocs., L.P.*, 247 B.R. 140, 145 (Bankr.E.D.Pa. 2000) (permitting sale under § 363(f)(4) because debtor's asserted right to commence strong-arm proceeding to avoid interest created a bona fide dispute); *In re Surplus Furniture Liquidators, Inc.*, 199 B.R. 136, 145 (Bankr.M.D.N.C.1995) (permitting sale under § 363(f)(4) where equitable lien was disputed).

Consequently, we conclude that section 363(f)(4) permits the sale of the Third Coast Capital assets free and clear of Anic's interest. The cases cited by Anic are distinguishable from this situation because the interest of Anic is subject to a legitimate dispute.[6] In fact, this case falls squarely within the parameters of section 363(f)(4). Anic's interests, if any, can be

---

6. In *Universal Bonding*, the Court found that a statutory trust existed, thereby precluding the debtor's use of the property. 960 F.2d at 372. In *Folger Adam*, the sale of substantially all the debtor's assets had already been approved when the issue of whether an account receivable allegedly subject to a setoff was included; the Court remanded for a determination of whether there had been any setoff pre-petition. 209 F.3d at 262. In *Mariner*, the Court concluded that the financing order did not constitute a sale of the debtor's assets. 267 B.R. at 57–58.

protected by placing the proceeds in escrow until his rights can be determined.

 Although Anic asserted that the price at which the assets were being sold was not fair and reasonable, the evidence presented did establish that the price bid was the highest and best. The Debtors marketed the property and the price offered was the highest. Given the fact that Bell has not been paying on the obligation for over four years, has recently emerged from bankruptcy and is not in compliance with its confirmed plan, it appears that the value of the loans are substantially less than their face value. Further, because the Debtors are themselves involved in a chapter 11 proceeding and the assets involved are not core assets, the conversion of those assets to cash at this time is in the best interests of the Debtors' estate.

Consequently, we will grant the Debtors' Motion to sell the Third Coast Capital assets free and clear of liens, including any interest which Anic may have in them. We will also direct that all proceeds be held in escrow until Anic's interest can be determined.

**E. *Relief from the Stay***

■ Anic has sought relief from the automatic stay for the purpose of seeking an order in the Illinois action imposing a constructive trust over the Third Coast Capital assets. The Debtors oppose the request, asserting that it will cause their estate to incur substantial additional attorneys' fees fighting that fraud action and that their efforts are required instead in proposing a plan of reorganization and dealing with other administrative matters involved in this chapter 11 case.

We agree with the Debtors that relief from the stay is not appropriate at this stage of the proceedings. Further, since we are requiring that the proceeds be escrowed, Anic's interests are protected until determination of those interests can be accomplished. Accordingly, we will deny Anic's motion for relief from the stay at this time.

## IV. *CONCLUSION*

For the reasons set forth above, we will grant the Debtors' motion to sell the Third Coast Capital assets and deny the Motion for relief from the stay filed by Anic.